[No. 21704. Department One. June 6, 1929.]

FRED M. WILLIAMS, *Appellant*, v. MAY P. BEVIS, *Respondent.*[1]

[1]Reported in 278 Pac. 193.

*Dan Danielson,* for appellant.

*W. W. Clarke,* for respondent.

BEALS, J.—In his complaint plaintiff alleges the execution of the following agreement by defendant on the one part and the firm of which he was a member on the other, the execution of the agreement being admitted:

"This agreement made this 1st day of March, 1917, by and between May P. Bevis, party of the first part, and Crandell, Williams and Crandell, attorneys, parties of the second part, Witnesseth:—

"Whereas one, H. J. Hibschmann as trustee in bankruptcy for M. L. and L. G. Bevis, has instituted suit in the superior court for Spokane county, Washington, against Clifford D. Bevis, *et al.,* being case No. 51520, to recover into the bankrupt estate certain certificates of the capital stock of the Metaline Lead Company, a corporation, in two of which said certificates known respectively as Nos. 3 and 252 said May P. Bevis claims ownership, said certificates being for 316,333 shares, and,

"Whereas said May P. Bevis has employed second parties as her attorneys in said action,

"Now therefore, it is hereby agreed by and between the parties hereto that second parties will do and perform all legal work in said action for and on behalf of said May P. Bevis to final judgment, including any necessary legal service in connection with said stock in said bankrupt proceedings.

"For and in consideration of said legal services first party agrees to pay to second parties the sum of $2,625, second parties to have and they are hereby given a lien upon said stock for said amount.

"It is further understood that first party recognizes the lien claims of Clifford D. Bevis, Joseph D. Bevis, and Elizabeth Bevis, and that if neither of said certificates (subject to the rights of said lien claimants)

are held to be the property of said May P. Bevis there shall be no charge for the legal services of said second parties.           "Signed May P. Bevis,
           "Crandell, Williams & Crandell."

Plaintiff then alleges that, within a short time after the signing of the contract above quoted, and before the trial of the action therein referred to, Mrs. Bevis called plaintiff's attention to the fact that the agreement did not fix the date when the payment for legal services which the plaintiff's firm was to render for defendant should be made, in the event that the litigation should be terminated in defendant's favor, and that it was then orally

". . . agreed that the payment should not be enforceable until the mining property of the Metaline Lead Company should be sold, contracted for sale, or disposed of, and that said contract should be so construed."

In her answer, defendant alleges that she called plaintiff's attention to the fact that the agreement was silent as to the time of payment for plaintiff's services, and that it was agreed between the parties,

". . . that the payments should not be enforceable until the mining property of the Metaline Lead Company should be sold, contracted for sale, disposed of or royalties received sufficient to pay the same amount due the said Crandell, Williams & Crandell, and that the exact amount of the payments to be made upon the said agreed fee, and the date of said payments, should be left to the later agreement of the parties herein, when the said mine should be sold and as the payments from the purchase price of said mine should be distributed to" defendant.

Plaintiff's former partners having assigned to him all their interest in the contract, plaintiff will hereafter, in this opinion, be referred to as though he had been the sole party of the second part thereto.

.Plaintiff having entered upon the employment provided for in the contract above quoted, carried the same to a completely successful conclusion, the certificates of stock referred to being declared to be defendant's property free from any claim on the part of the trustee in bankruptcy.

September 14, 1918, defendant and Mrs. Cora H. Bevis, the defendant in the other action hereinafter referred to, each paid plaintiff on account of his fee due him for services the sum of $55.55, for which plaintiff gave defendant a receipt in the following form (the receipt introduced in evidence being that given to Mrs. Cora H. Bevis, it being apparently undisputed that the receipt given to the defendant in this action was precisely similar, except as to the name of the person to whom the receipt was given):

"Sept. 14, 1918.

"Received from Mrs. Cora H. Bevis, fifty-five and 55/100 dollars on attorney fee in the case of Hibschmann vs. Bevis et al., being on the basis of 33 1/3 per cent on the amount of royalties received by her on her treasury stock in the Metaline Lead Co.

"Fred M. Williams

"Crandell, Williams & Crandell."

It appears from the testimony that this payment represented one-third of the distribution made to defendant on account of royalties earned by the mining company and distributed to its stockholders.

March 7, 1925, Metaline Lead Company contracted to sell its mining property for the sum of $100,000, payable in installments, payment of the first installment being extended to July 1, 1928, when the sum of $25,000 was paid to apply on the purchase price. The corporation thereupon made a distribution of most of this payment to its stockholders, defendant receiving a credit on account of her shares of stock in the sum of $5,499.99. Prior to this time, assessments

had been levied against the stock of the corporation, and, defendant not having paid her assessments, the corporation required her to pay from her distributive share of the money received by the corporation the sum of $3,693.68 due from her stock by way of such unpaid assessments thereon. Defendant received $1,806.28 in cash, being the balance of the distribution to which her certificates of stock entitled her.

July 25, 1928, defendant paid to plaintiff on account of the contract between them the sum of $400 for which plaintiff gave her a receipt, as follows:

"Spokane, Wash.
"July 25, 1928.

"Received from May P. Bevis the sum of $400 to apply on our claim for legal services heretofore rendered in the case of H. J. Hibschmann as trustee in bankruptcy for M. L. and L. G. Bevis vs. Bevis et al., commenced in the superior court of Spokane county as No. 51520 and appealed therefrom to the supreme court, said services having been performed under contract providing for a compensation of $2,625.

"Crandell, Williams & Crandell
"By Fred M. Williams."

August 16, 1928, plaintiff brought this action, alleging that the total amount due him for services under his contract with defendant was $2,625, and praying for judgment for the unpaid balance.

A trial was had to the court, which resulted in a judgment to the effect that defendant is indebted to plaintiff in the sum of $2,169.45, together with interest on a portion of that amount, the judgment reciting that plaintiff should recover the amount thereof only in case further payments are made to the Metaline Lead Company on account of the sale of its mining property and a distribution of the payment so made to the stockholders of the corporation, the judgment to be "payable as, if and when said distribution is

made." A writ of garnishment sued out by plaintiff and served upon the Metaline Lead Company was continued in force, but no execution to issue in connection therewith. Another writ of garnishment sued out by plaintiff against a savings and loan association was dissolved.

From this judgment, plaintiff appeals, contending that he is entitled to an absolute judgment for the balance due him, collectible forthwith by the usual processes of law.

The errors assigned are based upon the refusal of the trial court to sign findings of fact, conclusions of law and a form of judgment presented by plaintiff, and upon the entry of the judgment.

At the time the contract between appellant and respondent was entered into, appellant entered into a similar contract with Cora H. Bevis, the wife of L. G. Bevis, and an action similar to this is pending against those parties in which appellant seeks the same relief as in this action. A judgment similar to that entered in this action was entered in the other action, from which an appeal to this court has been taken on a short record, by stipulation of the parties the same judgment to be entered therein as will be directed in this action.

All parties agreed in their testimony that some oral construction or modification of the original contract was entered into as to the time when the money due appellant should be payable, in case he was successful in resisting the actions brought by the trustee in bankruptcy. Concerning this oral agreement, appellant himself testified as follows:

"They said at that time that, under the terms of the contract, if we should be successful in saving that stock for them, there would be nothing to interfere with our levying upon that stock; getting a judgment

and levying upon the stock and selling them right out. I said to them, 'We aren't doing business that way, and we will agree upon an interpretation of the contract that will protect you against our doing anything of that kind.' And then we agreed it shouldn't be enforceable until the mine should be sold or contract for sale.''

All parties to both actions agree that the written contracts were supplemented by an oral agreement as to the time when appellant's compensation should be payable, in case the same should be earned as provided in the written agreement. The respective parties to both actions, as well as appellant's former partners, testified as to their recollections of what was said concerning this matter.

At the close of the trial, the court rendered an oral decision, and later entered formal findings of fact and conclusions of law. Appellant quotes some portions of the oral opinion of the court, but, of course, the formal findings of fact as signed are controlling, and, when based upon contradictory testimony, will not be disturbed on appeal unless the evidence preponderates against them.

According to appellant's testimony, above quoted, the oral supplement to the written contract was made for the purpose of protecting respondent against a demand for payment on the part of appellant immediately upon the successful termination of the litigation instituted by the trustee in bankruptcy, but the trouble with appellant's position is that the oral agreement, which he testifies was made, does not meet the requirements of his own testimony as to the purpose of such agreement, as the mere fact that a contract might be entered into for the sale of the mining property, or even that a sale thereof might be made, would not necessarily at once, or even soon, place funds at respondent's disposal with which to pay appellant the

amount due him. Appellant furnishes the measure by which the oral agreement should be gauged, but the agreement which he contends was made falls far short of accomplishing the end which he says the parties had in mind. If appellant, under the oral agreement, could, immediately upon the making of a contract for the sale of the mining property, have demanded payment of the entire fee due him from respondent, respondent's stock might well have been sold under execution in a suit brought by appellant and wholly lost to her before the making to her of any distribution of the proceeds of the mining property. Indeed, it would seem that sufficient time for this actually elapsed, as appellant states in his brief that the contract for the sale of the mining property was entered into in March, 1925, and no distribution was received by respondent until July, 1928.

We cannot say that the evidence preponderates against the finding of the trial court that appellant's compensation was to be payable only out of the proceeds of the sale of the mine belonging to the Metaline Lead Company. It, of course, follows that payment can only be made as money is distributed to respondent as her *pro rata* share of funds due the stockholders of the corporation.

Appellant complains because only the net amount received by respondent upon the distribution of the $25,000 payment on account of the purchase price of the mining property was considered as the amount distributed to respondent. The assessments levied against respondent's stock were an obligation due from respondent to the corporation, and respondent's stock was liable therefor. By the terms of the written agreement between the parties to this action, appellant had a lien upon respondent's stock, but it may fairly be assumed that the assessments levied by

the corporation were a superior lien thereon, and the fact that the corporation had forborne to press its claim to the assessments until money was available by way of a distribution from which the same could be paid, did not prejudice appellant, but rather protected him. We are clearly of the opinion that, as between respondent and appellant, the net amount received by respondent after deduction of the amount due the corporation should be considered as the amount received by respondent on the first distribution.

■ Appellant contends that the trial court placed an arbitrary construction upon the contract which is at variance with its express terms. The parties themselves supplemented the written contract by the oral agreement above referred to. The trial court did not vary or even construe the terms of the written contract. The question was as to the later supplementary oral agreement between the parties.

■ Appellant also contends that the judgment of the trial court is based upon a holding that the written receipts given by appellant made some new agreement. Written receipts given by a party to a contract may properly be considered as evidence of what the contract between the parties really was, in case a dispute arises concerning its terms, which is a very different thing from holding that the receipts themselves constitute a new contract. It is true, as appellant urges, that neither of the receipts given by him made any new contract. It is equally true that the receipts should be considered in determining what were the terms of the oral supplemental agreement theretofore entered into between the parties.

■ Appellant contends that the oral agreement amounted to no more than an agreed construction of the written contract. From an examination of the latter, it appears at least probable that the fear of

respondent that, under the same, appellant could, as soon as the litigation therein referred to should be determined in respondent's favor, immediately demand payment of the entire amount of his compensation, was well-founded. Appellant himself pleads the oral agreement, and relies thereon, and whether or not the same was simply an agreed construction of the written contract or an agreement supplementary thereto, is not important. The testimony as to just what the terms of this oral agreement were being conflicting, we have studied the record with care, and are unable to find that the evidence preponderates against the finding of the trial court. Appellant's contention as to the terms of the oral agreement is not effectually supported even by his own testimony, and it is at least singular that, if, at the time appellant accepted $400 and gave a receipt therefor, he was entitled to immediate payment of the entire balance due to him, he would have accepted payment of a much smaller amount and receipted therefor as he did. The acceptance of such a payment, while nowise conclusive that the amount so paid was all that appellant was then entitled to demand, is still some evidence of what the parties believed were their respective rights and liabilities, and as such is entitled to consideration, not, as we have before stated, as tending to prove the making of any new contract, but as indicating what the terms of the prior agreement actually were. It is also significant that the receipt given by appellant to respondent September 14, 1918, recites that the payment made was ''on the basis of 33-1/3 per cent on the amount of royalties received'' by respondent. This indicates that the amount received by respondent from the corporation was not all to be paid to appellant, but that he was entitled to some definite proportion thereof. The testimony is conflicting, and, as often

happens when persons are testifying as to the terms of an oral agreement made many years before the testimony is given, is not always clear or entirely convincing. The trial court had the advantage of hearing and observing the witnesses and the conclusion of that court on disputed questions of fact is entitled to great weight.

The judgment of the trial court provides that the entire balance due the appellant shall be paid out of the next distribution made on respondent's stock, and protects appellant by maintaining in full force and effect the writ of garnishment served by appellant upon the Metaline Lead Company. It is, of course, true that possibly no further payments may be made on account of the purchase price of the corporation's mining property. We have considered the record before us upon the basis that appellant is seeking to exercise the last opportunity he will have to obtain payment of the fee which he has apparently well earned. Careful consideration of the entire record, however, satisfies us that the judgment entered by the trial court granted appellant all the relief to which the record shows him to be entitled.

Judgment affirmed.

MITCHELL, C. J., FULLERTON, and TOLMAN, JJ., concur.

HOLCOMB, J., dissents.