[No. 26196. Department Two. October 1, 1936.]

ELIZABETH SPAULDING, *Respondent*, v. LEGRANDE
SPAULDING, *Appellant*.[1]

*Moulton & Powell,* for appellant.

*Frank R. Jeffrey* and *George O. Beardsley,* for respondent.

MAIN, J.—This is a divorce action. The plaintiff sought a decree on the ground of cruelty. The defendant denied the charges made in the complaint and sought a decree in his own behalf. The cause was tried to the court, and resulted in findings of fact from which it was concluded that the plaintiff had established her charge, which, in effect, was mental cruelty due to indifference. From the interlocutory decree awarding the divorce to the plaintiff and adjusting, as between the parties, their property, the defendant appeals.

[1]Reported in 60 P. (2d) 1106.

The respondent and the appellant were married November 24, 1924. No children were born to them, but, by a prior marriage, the respondent had two children and the appellant one. Prior to the marriage, the respondent had been a professional nurse, acting in many cases as an assistant to the appellant, who was a practicing physician. After the marriage, the respondent acted as a nurse and office assistant in the doctor's office for approximately five years. She also took care of the home, which included the parties and their children above mentioned, as well as the mother of the appellant until her death. The respondent was kind and considerate of all the children, as well as of the mother of the appellant. No complaint is made against her on this account, and there is no complaint as to the manner in which she conducted the home.

At the time of the marriage, neither of the parties had accumulated any considerable amount of property. The appellant owned no property, except his office equipment, an automobile, and his accounts receivable. He had an outstanding indebtedness of approximately fifteen hundred dollars. It may be said that the respondent had no property at the time of the marriage. At the time of the trial, all the assets which the parties had were community in character. The appellant, in the practice of his profession in the city of Kennewick, this state, had long enjoyed a lucrative practice both in medicine and in surgery. His gross income, including cash and accounts receivable, had averaged approximately $17,000 per year. His cash receipts averaged approximately $10,500 per year, and his net income, after deducting expenses in connection with the practice of his profession, had been from four hundred to six hundred dollars per month. At the time of the trial, the community property of the parties, which was the subject of the decree,

was of the total value of approximately twenty thousand dollars. At that time, the respondent was forty-three years of age and the appellant sixty-one.

Upon the appeal, speaking generally, two questions are presented, one as to whether the respondent was entitled to the decree, and the other as to the division of the property.

With reference to the decree of divorce, the trial court found, in effect, that the appellant had been indifferent and inconsiderate of the respondent to the extent that it amounted to mental cruelty. The trial court did not find, and the evidence does not show, that the respondent at any time was physically mistreated. After considering the evidence upon this question, and it would serve no useful purpose to set out the details thereof, we are of the view that the finding of the trial court should be sustained.

As to the division of the property, the trial court gave diligent and considerate attention, having taken the case under advisement at the conclusion of the trial and subsequently filed a memorandum opinion, which, apparently, had been carefully prepared after giving thorough consideration to the evidence. As stated in the memorandum opinion, and also in the findings of fact, the court was of the view that the property of the parties should be approximately equally divided between them. The property consisted of many items, some of which, by the decree, are given to the respondent and some to the appellant.

Particular objection appears to be made to two of the items, one, the allowance to the respondent of alimony in the sum of one hundred dollars per month for a period of twenty-four months. As stated, the respondent, prior to the marriage and for a time subsequent thereto, practiced her profession as a nurse. She had at no time been registered as such in this

state. She had been a sufferer for some years from varicose veins. Before she could again enter upon a career of earning a living, it would be necessary for her to rehabilitate herself professionally, as well as physically. This, naturally, would take time. With reference to the varicose veins, the appellant testified that:

" . . . If the treatment does all they claim for it and all they promise to do in a year or so, then she ought to be entirely well and be stronger than she has ever been. . . ."

Naturally, some provision should be made for the respondent until such time as she could be reasonably expected to begin the practice of her profession again. In the light of her condition, it seems plain to us that the provision for alimony of one hundred dollars per month for a period of two years should not be disturbed.

■ The other item of which complaint is made is with reference to the outstanding accounts receivable at the time the decree was entered, the amount of which was approximately $33,500, which the appellant and his bookkeeper estimated to have an actual value of not exceeding $8,300. Of this latter sum, each of the parties was given one-half. This disposition of the item appears to us to be just and equitable, especially in view of the fact that the property was that of the community, and that the respondent had assisted in producing it.

A review of the cases from this court, cited by the respective parties, would be of very little assistance, because every case of this character must be determined largely upon its own facts. The case most closely analogous is that of *Vanderpool v. Vanderpool*, 186 Wash. 360, 57 P. (2d) 1253, where a decree award-

ing a divorce to the wife and adjusting the property rights of the parties was sustained.

Rem. Rev. Stat., § 989 [P. C. § 7508], provides that, in granting a divorce, the court shall make such disposition of the property of the parties as shall appear " . . . just and equitable, having regard to the respective merits of the parties, and to the conditions in which they will be left by such divorce, and to the party through whom the property was acquired, . . ."

After considering all of the evidence, we are of the view that the trial court came as nearly making a just and equitable distribution of the property as could be done. In reaching this conclusion, we have not overlooked the contention of the appellant to the effect that a considerable portion of his income, coming to him from the practice of surgery, would diminish after a few years owing to his age.

The interlocutory decree will be affirmed.

BEALS, BLAKE, and GERAGHTY, JJ., concur.

MILLARD, C. J. (dissenting)—Under the evidence, as I read it, the decree should have been granted on appellant's cross-complaint.

A just division of the property has not been made. The award to respondent should not have exceeded one-half the net value of the community property, excluding the accounts receivable, and one hundred dollars a month for six months. She should not have been awarded any interest in the accounts receivable. When respondent married appellant, she had nothing and was burdened with her children. Appellant owed fifteen hundred dollars and had separate property of the value of thirteen thousand dollars, including accounts receivable. The community now owes in excess of five thousand dollars and, including accounts receivable, owns property worth approximately twenty

thousand dollars, leaving a net value of $14,620 as against separate property originally owned by appellant of the net value of $11,700.

From this, it will be seen that the value of the estate increased in the amount of $2,870 during the eleven years of married life. The decree awards to the respondent, who is nineteen years younger than appellant, $10,253 guaranteed by a mortgage, as counsel for appellant aptly states, ''upon the skill and drudgery of appellant,'' while to appellant the decree awards a total of $12,100, charged with the obligation to pay debts amounting to $5,333 and alimony in the amount of $2,400. At the same time, the appellant is deprived of one-half of the normal income from outstanding accounts, and the appellant's entire professional practice is jeopardized by placing the accounts in the hands of a collector.

I am in accord with the following argument of counsel for appellant:

''Against this situation stands the fact that respondent is but forty-three years of age and is thoroughly capable of supporting herself. True, she claims that she does not know how to do anything but cook and nurse, that she cannot cook because she cannot be on her feet, and that she cannot nurse because she is not qualified to register. It is fair to infer from the record that within a comparatively short time her inability to be on her feet will disappear, and with it her inability to cook. She was not registered in 1922 and 1923 when she followed her profession of nursing and ran a small hospital, by means of which she supported herself and two children. Lack of registration will not prevent her from doing practical nursing or running a hospital and thus again supporting herself, free as she now is from the burden of two small children. There are scores of ways by which women who have the will to do so, support themselves and children, whose health is far from as good as respondent's. True, it would be more agreeable to be relieved of the

burden of self-support as far as possible. No doubt respondent would greatly prefer to continue to enjoy the same social status and comfort as were afforded her by appellant. This record, however, is totally devoid of any facts justifying the wrecking of appellant's remaining years for that purpose.

"Equity may not be done between these parties by establishing any given standard of living for one and decreeing that the other shall contribute sufficient to insure that standard. Under the circumstances of this case each should be given such portion of the community estate as will, when supplemented by earnings, enable each, so far as possible, to maintain the standard enjoyed at the time of marriage. If the estate affords more, each should benefit accordingly."