[No. 32015. Department Two. January 9, 1953.]

HAROLD P. HIGH, *Appellant*, v. JESSIE R. HIGH, *Respondent*.[1]

[1]Reported in 252 P. (2d) 272.

Donald F. Jennings and James Tynan, for appellant.

George Olson and George F. Ward, for respondent.

FINLEY, J.—A default divorce decree, rendered on September 23, 1949, in King county, Washington, in an action by Jessie High against Harold High, awarded Jessie a divorce and the custody of a child. It provided for monthly child-support payments, allowed attorney's fees to the wife, and made a division of the property of the parties.

Subsequently, Harold High succeeded in having the default decree vacated in so far as it had adjudicated property rights and had allowed attorney fees to the wife. In other respects, the decree was permitted to stand. The order of the court (quoted in part hereinafter), vacating the property division made previously by the court in the divorce action, provided that either spouse could, within sixty days, commence an action to secure a division of the property. Harold High commenced such an action. Therein, the superior court again decreed a division of the property. In the case before us, Harold High appeals from the second property division made by the court.

An understanding of the questions raised herein requires some knowledge of the facts leading up to this appeal. Harold, appellant, and Jessie, respondent, lived together as man and wife from 1931 until 1948, in the good faith, but the mistaken belief, that a common-law marriage is valid in this state. In this same period, they adopted a child. Together, they operated a business located on Bothell way in King county, known as High's Rustic Cedar Co. The record shows this business was one initially acquired by Jessie from her family. With the proceeds of the business, the parties acquired three separate tracts of land, located in Douglas and Snohomish counties, Washington.

The parties had a falling out. They could not compose their differences and decided to separate. On the advice of an attorney, ostensibly for the purpose of eliminating doubts as to the status of their adopted child, the parties were married in the state of Idaho, with the understanding that they would be divorced immediately. A week after the marriage, they met again in the office of the attorney, and Harold High, the husband, executed documents whereby Jessie High, the wife, acquired a one-half interest in High's Rustic Cedar Co., and an undivided half interest in the three separate land tracts. The parties also decided that Jessie would continue to run the business (High's Rustic Cedar Co.), while Harold would commence and conduct a logging venture on his own with a business partner of his choice. At this same meeting, Harold was served with a summons in Jessie High's divorce action against him. Although he denies the summons was served upon him, it is undisputed that he had knowledge of the pendency of the divorce action.

In the ninety-day waiting period relative to the divorce action, two things happened which bear upon the property division which we ultimately affirm herein. First, Harold incurred substantial losses in his independent logging venture or business, and the losses were paid by Jessie. Secondly, Harold refused to have any part of a zoning suit commenced by King county to stop the operation of the business (High's Rustic Cedar Co.) on the Bothell way property; however, Jessie evinced a desire to save the business, and spent fourteen hundred dollars in attorney's fees successfully defending the zoning suit. See *King County v. High,* 36 Wn. (2d) 580, 219 P. (2d) 118, 18 A. L. R. (2d) 722. Jessie claims that, during this period, the parties entered into an oral modification of their prior property settlement agreement. As modified, Jessie got the business, that is, High's Rustic Cedar Co., and Harold took as his separate property certain heavy logging equipment theretofore owned jointly by both parties.

On September 23, 1949, as mentioned above, a default divorce decree was entered against Harold High. Subse-

quently, in February, 1950, after he had failed in his separate logging venture, he claimed he had been excluded improperly from the High's Rustic Cedar business, and, as indicated above, he succeeded in having the divorce decree set aside in so far as it had adjudicated property rights, and in so far as it awarded attorney's fees to Jessie High. As pointed out above, the trial court's order provided that either party, within sixty days, could bring an action to secure a division of their property, and further provided

". . . that in said action the Court shall have the same powers to make such division of property and impose terms and conditions in connection with such division as . . . [it] would have had in an action for divorce between the parties under the divorce statutes of the State of Washington, . . . and upon the institution of said action, the Court shall have the same power to award the temporary possession of all or any of such property pending the final determination of the action on the same terms and conditions that such Court would have in an action of divorce between the parties."

The proceeding commenced by Harold High under the above court order was designated in his complaint as a "partition" suit. Jessie cross-complained on the basis of the alleged oral modification of the original antenuptial property settlement agreement. The trial court denied plaintiff husband's prayer for appointment of a receiver. Such appointment would have been a normal step in an action to partition property. Near the end of a trial without a jury, Harold's attorney made a trial amendment in his client's complaint, whereby he incorporated paragraph V of the cross-complaint of the wife, Jessie, which listed all of the property of the parties. The prayer of Harold's complaint also was changed to ask that all of the property be "partitioned justly and equitably." The parties were allowed time to complete an inventory or list of their property with a view to having values determined and a division of the property made later on by the court.

At a hearing held some months later, the trial court found, among other things, that the logging equipment

owned by the parties was worth $20,000 at the time it was taken by Harold High for use in his logging venture, and that it had depreciated substantially to a value of $8,850. The record shows the depreciation resulted from Harold's neglect in abandoning the equipment in the mountains, exposed to the elements. The court also found that Jessie had advanced some $3,800 to pay Harold's debts, incurred in his logging venture. In a short oral opinion, the trial judge indicated the value of the Bothell way property, with the business thereon, was "approximately equal in net value" to the logging equipment appellant had received. The court then awarded the Bothell way property, with the business thereon, to defendant wife, subject to outstanding debts of the business. The personal property, consisting mainly of the heavy logging equipment and trucks, was awarded to plaintiff husband. As to the separate tracts of land, the court ordered that they be sold by the parties within six months, and that the net proceeds be divided equally between them; but provided that, if the tracts were not sold within that time, either party could apply for an order to have the property sold at public sale.

First, we note that neither the trial court nor the litigants mentioned the effect of Rem. Supp. 1949, § 997-11 (cf. RCW 26.08.110; cf. Rem. Rev. Stat., § 988), providing, *inter alia*, that a divorce decree "as to the custody, management and division of the property shall be final and conclusive," subject only to an appeal.

Since the present state of the record gives no clue whatsoever as to the statutory ground for vacating the default decree, it must be presumed that some proper ground existed. *State v. Lindsey*, 150 Wash. 121, 272 Pac. 72. In earlier decisions involving the question of the finality of a divorce decree as to property matters, we have indicated that the court can entertain vacation proceedings in appropriate cases where the time for an appeal has elapsed. *State ex rel. Gaupseth v. Superior Court*, 24 Wn. (2d) 371, 164 P. (2d) 890; *Kern v. Kern*, 28 Wn. (2d) 617, 183 P. (2d) 811.

■ ˙ Without detailing at length the facts of *Cassutt v. Cassutt,* 126 Wash. 17, 217 Pac. 35; *Brown v. Brown,* 192 Wash. 333, 73 P. (2d) 795; and *Ford v. Ford,* 22 Wn. (2d) 303, 155 P. (2d) 485, we are of the opinion that the trial court, in setting aside the default divorce decree as to property rights and ordering that either party could commence an action for a division of their property within sixty days, did not adopt the practices we forbade in those cases. The order of the court vacating the initial property division did not substitute another division of the property; therefore, the court, at that stage of the matter, did not purport to retain a continuing jurisdiction over the parties' property for the purposes of modification and alteration contrary to the rule of the *Cassutt, Brown,* and *Ford* cases. In substance, the court merely continued the hearing and deferred all action as to a division of the property until a later date, at which time the parties could present testimony and argument respecting the merits of their conflicting claims to the property.

The assignment of error attacking the failure of the trial court to abide by the partition statutes is without merit. We need not decide whether this action ever was a partition suit, or whether the appellant could change the terms of the vacation order by his own characterization of the suit as one for a partition, for the record clearly shows the appellant expressly abandoned any such theory in the trial court. This abandonment is shown by his trial amendment, made just before the court's oral decision, whereby appellant (plaintiff) incorporated paragraph V of the cross-complaint (which listed all property of the parties and sought a just and equitable division of the same). We have noted, also, that he changed the prayer of his complaint for relief by trial amendment, and asked for a "division of real and personal properties of the parties as may be just and equitable."

■ One can abandon his initial theory or cause of action by filing amendatory pleadings, in which case there is a supersedure of the former pleadings. *Skidmore v. Pacific*

*Creditors,* 18 Wn. (2d) 157, 138 P. (2d) 664; *Seely v. Gilbert,* 16 Wn. (2d) 611, 134 P. (2d) 710; *Herr v. Herr,* 35 Wn. (2d) 164, 211 P. (2d) 710. While it is true that none of these cases involves the effect of a trial amendment, in a case as clear as the instant one, we see no reason why that same rule should not apply.

The appellant's contention that the property of the parties was not before the court for a disposition, also, is an idle one, in the light of the wording of his trial amendment. The very purpose of that amendment was to bring all property of the parties before the court for a just and equitable division.

In his brief, appellant makes the following assignments of error:

"The court erred:

"1. In entering conclusions of law which are not supported by the findings of fact, and in entering a decree based thereon.

"2. In awarding the real property on Bothell Way and the business operated as 'High's Rustic Cedar' to respondent.

"3. In refusing to award to appellant a half-interest in 'High's Rustic Cedar.'

"4. In ordering the sale of the remaining real property.

"5. In making an unequal and inequitable division of property.

"6. In failing to appoint referees to make partition.

"7. In denying the motion for rehearing and reconsideration.

"8. In denying the motion for new trial."

We have heretofore disposed of assignment of error No. 6, listed above. Assignments of error Nos. 2, 3, and 5, as quoted above, involve substantially the same question— whether the property division was just and equitable. They will be considered together. Jointly, they imply an attack upon the findings of fact made by the trial court. These assignments, appearing in appellant's brief in the portion thereof captioned, "Assignments of Error," do not refer to any findings of the trial court by number or description. It is only by searching through appellant's brief that we dis-

cover his intention to attack findings No. VIII and No. IX, and possibly, findings Nos. X and XI. Although the portion of the finding attacked is not clearly described, it seems that appellant objects to the court assigning a value of $20,000 to the heavy logging equipment taken by Harold High for use in his logging venture. Appellant contends that the valuation of this equipment at $20,000 was erroneously made by the court in relation to the value of the property at the time the original divorce action was commenced. In finding No. XI, the trial court clearly determined the value of the logging equipment—not as of the date the divorce suit was commenced, but as of the date the findings were signed. The value was fixed, not at $20,000, but in the sum of $8,850. Obviously, appellant's contentions as to this aspect of the matter are completely without merit.

█ The evidence does not preponderate against this finding, and it must therefore stand. *Lopeman v. Gee*, 40 Wn. (2d) 586, 245 P. (2d) 183. Appellant's contention that the court erred in selecting the date for the valuation of the personal property used in the operation of High's Rustic Cedar Co. is also without merit.

In his brief, appellant states:

"The court orally held that the value of the business was 'approximately equal net' to the value of the machinery in possession of the appellant (St. 365); and then, without cause or excuse, gave her in addition the large tract of land upon which it was operated. Such arbitrary and oppressive determination should not be allowed to stand."

The findings on the immediately foregoing aspect of the case are not crystal clear. Finding IX places a total value of $7,300 upon the personal property, machinery, and equipment used in the operation of High's Rustic Cedar Co. Presumably, this sum includes the inventory, accounts receivable, and the cash, without any deduction for debts or accounts payable in the total sum of $5,300. In finding No. XII, the court refers to a financial statement of High's Rustic Cedar Co., attached to the findings. In the financial statement, the net value of the business appears to be $2,175.03. In finding No. IV, the Bothell way real estate was valued by

the court at $6,200. In the financial statement, the same real estate was valued at $5,000. With the findings in this state (as to the value of the property awarded to Jessie High), we refer to the brief oral opinion rendered by the court at the close of the trial of the case. It reads as follows:

"All right. I will find that the value of the business conducted by the plaintiff—the defendant at the location on Bothell Way is approximately equal net to the value of the machinery in the possession or under the control of the defendant, which I find according to the defendant to be $8,800. He may have that, and we will charge him $8,300 for it. That's the bulldozer and the like, you gentlemen understand.

"She may have the business as it is out there with the property on which it is conducted, which involved the entire strip shown in that exhibit, which is exhibit number—"

The above-quoted portion of the oral opinion indicates that the trial court contemplated an award of the business, as well as the Bothell way real estate, to Jessie High, and, apparently, at a valuation of $8,300 for all of it. This is in line with and explains some of the inconsistencies in the findings of the court regarding the values of the property awarded to Jessie High. The Bothell way real estate, valued at $6,200 in finding IV, plus a net value of $2,000 for the assets of High's Rustic Cedar Co., calculated from finding No. IX (total assets $7,300 less total indebtedness of $5,300), equals the sum of $8,200.

In *Mertens v. Mertens,* 38 Wn. (2d) 55, 59, 227 P. (2d) 724, we said:

"We have held that, when a memorandum decision and a finding of fact are at variance, the finding of fact and not the memorandum decision is controlling, and that a memorandum or oral decision cannot be used to impeach the trial court's formal findings of fact or judgment. *Williams v. Bevis,* 152 Wash. 469, 278 Pac. 193; *Clifford v. State,* 20 Wn. (2d) 527, 530, 148 P. (2d) 302. But where, as here, the formal findings of fact are consistent with the views expressed in the memorandum decision, they are to be read in the light of the views expressed in that decision. *Kinnear v. Graham, supra; McLean v. Continental Baking Co.,* 9 Wn. (2d) 176, 114 P. (2d) 159."

The trial court's oral opinion appears to place a value of $8,300, and the findings appear to place a total value of $8,200 on all of the property awarded to Jessie High. The evidence does not preponderate to the contrary, and the value, as found by the trial court, should stand.

■ Disregarding for the moment any question relative to the findings and appellant's attempted attack upon them, we are of the opinion that, on the entire record, the division of the property made by the trial court was just and equitable, considering all of the significant facts and circumstances involved.

In *Webster v. Webster,* 2 Wash. 417, 26 Pac. 864, we said:

"It is an equitable division of the property rights of the parties that the court is authorized to make . . . the parties shall bring into court all their property, and a complete showing must be made. Each party must lay down before the chancellor all that he or she has, and, after an examination into the whole case, he makes an equitable division . . . *The law does not require an equal division of the property, but a 'just and equitable' division, and as no general rule for a just and equitable division can be laid down, but each case must be adjusted according to its own merits and the particular circumstances surrounding it, the court investigates all the circumstances."* (Italics ours.) (p. 419.)

In *Oestreich v. Oestreich,* 2 Wn. (2d) 72, 75, 97 P. (2d) 655, we said:

"It has often been said by this court that, in a divorce action, all the property of the spouses, both community and separate, is brought within the jurisdiction of the court for disposal and may be disposed of in any manner that may be equitable and just, *even to the extent of awarding it all to the wife."* (Italics ours.)

■ The discretion accorded the trial court is a broad one. We will not reverse readily on appeal, absent a clear showing that the property division constituted an abuse of judicial discretion. In *Holm v. Holm,* 27 Wn. (2d) 456, 463, 178 P. (2d) 725, we said:

"In the very nature of things, no two divorce actions present exactly the same issues, and each case must there-

fore be determined upon the basis of its own particular facts and circumstances. *Otto v. Otto,* 178 Wash. 41, 33 P. (2d) 1074; *Spaulding v. Spaulding,* 187 Wash. 689, 60 P. (2d) 1106; *Hathaway v. Hathaway,* 23 Wn. (2d) 237, 160 P. (2d) 632.

"By reason of that recognized situation, the trial court is given a wide discretion in matters relating to the division and disposition of property in divorce actions, and the appellate court will not, upon review, interfere with the decision of the trial court, unless it appears from the entire record that injustice has been done or that the trial court has abused its judicial discretion. *Kolbe v. Kolbe, supra; Doyle v. Doyle,* 190 Wash. 533, 69 P. (2d) 805; *Kirsch v. Kirsch,* 192 Wash. 156, 73 P. (2d) 356; *Mapes v. Mapes,* 24 Wn. (2d) 743, 167 P. (2d) 405.

"The term 'abuse of judicial discretion' does not mean simply the decision of a case by whim, caprice, arbitrary conduct, through ulterior motive, or in willful disregard of a litigant's rights, but contemplates as well a discretion exercised upon grounds, or to an extent, clearly untenable or manifestly unreasonable. *State ex rel. Beffa v. Superior Court,* 3 Wn. (2d) 184, 100 P. (2d) 6; *State ex rel. Nielsen v. Superior Court,* 7 Wn. (2d) 562, 110 P. (2d) 645 (on rehearing, 7 Wn. (2d) 574, 115 P. (2d) 142)."

The record shows one consideration of the trial judge was that the child be properly taken care of, and that respondent be awarded the Bothell way property so she could use the small house located thereon as a home for the child and herself. Furthermore, a future source of income had to be provided for respondent and her child, and especially was this necessary in view of the fact that appellant had constantly been in default regarding the support-money payments provided for under the initial divorce decree.

It is apparent from the record that the respective properties the parties received were approximately equal in net value as found by the trial court. Appellant received valuable logging equipment, worth about $20,000 when received. It depreciated considerably *because of appellant's own neglect in caring for it.* The record further shows that not until about February, 1950, after appellant had failed in his separate logging venture, did he make any claim of ownership in the Bothell way business. Until then, seemingly, he had

lost all interest in it, as shown by his refusal to take any interest in defending the zoning suit.

Respondent became and remained the driving force behind the business. When she took it over, it was subject to substantial debts. She, alone, manifested a willingness to continue the business. Under such circumstances, we have previously held that an award of the business is proper when made to the wife. Thus in *Curtis v. Curtis*, 110 Wash. 644, 188 Pac. 771, where the chief asset of the parties was a studio against which there were debts equal to its value, and where the husband had abandoned his interest in running it, and the wife could and did run the business, we held an award of the business to the wife would not be disturbed. See, also, *Clemans v. Western*, 39 Wash. 290, 81 Pac. 824.

In view of the conduct of the parties and all of the facts and the circumstances in this case, the failure of appellant under Rule on Appeal 43, 34A Wn. (2d) 47, as amended, effectively to assign error to the findings on valuation, and in consideration of the cases discussed herein, we are convinced, (a) that the division of the property was just and equitable, and (b) that it must stand.

■ However, we are of the opinion that the trial court erred in ordering that (a) the separate tracts of land be sold by private agreement; or, (b) failing this, that the tracts be sold at a public sale. The record shows the trial court recognized the separate tracts had been bought for speculation and were relatively valueless now, but might become valuable in future years. Undoubtedly, the trial court, in entering this part of the order, was motivated by a desire completely to sever all relations between the parties and to settle all differences as to the property.

We have been unable to find any cases in this jurisdiction dealing with the power of a court to order the sale of divorced persons' property, nor has counsel for either side cited us to any such authority. However, in *In re Carroll*, 135 Cal. App. 672, 28 P. (2d) 84, a divorce case, it was held that a court cannot order the sale of property which the

parties hold as tenants in common and require a division of the net proceeds as in a partition suit. We think the same rule should apply here.

█ Under the circumstances, since the trial court recognized the property had been bought for speculation and was worth little now but might increase in value later, it must be held that the court abused its discretion in ordering a sale of the separate tracts. *Cf. Wells v. Wells*, 130 Wash. 578, 228 Pac. 692, where we approved the awarding of undivided half interests in property which, if sold at a forced sale, would have brought far less than its real worth.

The decree of the trial court is affirmed, except as to the portion thereof ordering the sale of the three separate land tracts in Douglas and Snohomish counties. The case is remanded for further proceedings consistent with the views we have expressed herein, and with instructions that the parties be permitted to hold their undivided half interests in these separate tracts of land until such time as a division or other disposition can be agreed upon or effectuated in a proper proceeding for partition.

SCHWELLENBACH, C. J., HILL, HAMLEY, and OLSON, JJ., concur.

March 5, 1953. Petition for rehearing denied.