ROY M. BERGER and BETTY LOU BERGER, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Berger v. Commissioner
Docket No. 2134-72.
United States Tax Court
T.C. Memo 1974-172; 1974 Tax Ct. Memo LEXIS 146; 33 T.C.M. (CCH) 737; T.C.M. (RIA) 74172; June 26, 1974, Filed. Raymond D. Torbenson, for the petitioners. Charles L. Eppright, for the respondent. SCOTT MEMORANDUM OPINION SCOTT, Judge: Respondent determined a deficiency in petitioners' Federal income tax for the calendar year 1969 in the amount of $30,937.79. The only issue for decision is whether petitioners received a constructive dividend from Evergreen Industries, Inc., because of the redemption by that corporation of stock of Roy M. Berger's former wife, which stock had been the subject of a decree of a county court granting a divorce and providing for a division of property. All of the facts have been stipulated and are found accordingly. *147 Petitioners, husband and wife who resided in Edmonds, Washington at the time of the filling of their petition in this case, filed a joint Federal income tax return for the calendar year 1969 with Western Service Center of the Internal Revenue Service in Ogden, Utah. Prior to February 25 , 1965, petitioner Roy M. Berger (hereinafter referred to as petitioner) was married to Anna Marie Berger (hereinafter referred to as Anna). After months of separation, petitioner on March 19, 1964, instituted an action for divorce against Anna. On February 25, 1965, the Superior Court of King County, Washington entered its findings of fact and conclusions of law and also entered its Decree of Divorce in the cause. At the time the divorce suit was commenced, petitioner and Anna owned all the stock in Evergreen Industries, Inc., as community property. Nine hundred shares of this stock had been issued in Anna's name and 1,350 shares in petitioner's name. Prior to the entry of the divorce decree, several hearings were held with respect to the cause. At a hearing held on January 12, 1965, the court stated that a divorce would be granted and that it was noticed from reading a pre-trial affidavit *148 that the nature of the property involved made it difficult to distribute since the main asset "apparently is the machine shop, and if we attempt to divide that, we just ruin the business." The court further stated that it was hoped that counsel could work out the problem in a way that would provide substantially a fifty-fifty split of all assets. The court then set the cause for further hearing for the purpose of determining a division of the community property of the parties. A second hearing was held on February 1, 1965, at which petitioner's counsel stated that an agreement had been reached between him and Anna's counsel that the book value of the 2,250 shares of stock in the machine shop (Evergreen Industries, Inc.) would be split based on the last balance sheet, showing a balance of approximately $128,500. Thereafter counsel stipulated that the book value of the corporation as of December 31, 1964, would be used in determining the value of the stock which was to be split between the parties. Petitioner's counsel then presented to the court as a basis for the split that "we give Mrs. Berger [Anna] one-half of the value of that stock based upon that balance sheet" and *149 that the stock in her name be placed in escrow with a bank "subject to a redemption agreement between Mrs. Berger and Mr. Berger, wherein Mr. Berger would pay $400 or more per month for the value of that stock interest;" and that no voting rights be exercised by Anna during the period of the stock redemption; and that the stock not be pledged or hypothecated in any way during this period, but that each party execute a will leaving his or her stock to the two adult children of the parties. There followed a discussion in which Anna's counsel recommended that a value per share should be placed on the stock limiting petitioner's right "to redeem it" to a specific number of shares yearly since otherwise Anna would incur a large income tax liability in one year since the stock had a low basis to her. There was discussion with respect to a method of guaranteeing payment to Anna in the event of petitioner's death. The court inquired whether there should be a provision that if petitioner died before "the shares are all redeemed the obligation dies with him." Anna's counsel answered, "No, sir." There followed a discussion of the business depending on petitioner's know-how and ability *150 to run it, after which petitioner's counsel suggested that "the corporation be allowed to redeem Mr. Berger's stock that he would be purchasing from Mrs. Berger in the same manner as Mr. Berger has a right to redeem at this time." There then followed a discussion with respect to petitioner's group life insurance and assets of the corporation which would be available to pay for Anna's stock in the event the corporation would be liquidated if petitioner died. The court then stated with respect to provision for Anna in case of petitioner's death before she had received the full value of her stock as follows: Couldn't we leave it this way, that she will not get, in any event, whether from life insurance or from the sale of the business, more than this $64,000 figure, either the sale of the business and/or the proceeds of the life insurance would be considered as applying on this distribution? Petitioner's counsel then stated: And then with the other stipulations, are we agreed to that as I recited them; that to the extent permitted by law the corporation will be allowed to redeem? The court in its findings of fact and conclusions of law listed the various items of community *151 property held by the parties and the division of these items between petitioner and Anna. In stating the part to go to Anna, the conclusions of law recited that one-half of the book value of 2,250 shares of common stock of Evergreen Industries, Inc., presently held 1,350 shares by petitioner and 900 shares by Anna, should go to Anna. The certificates held in Anna's name were then described, and it was provided that they should be placed in escrow, together with a copy of the findings of fact and conclusions of law and decree of the court, to be held by the bank subject to the instructions and conditions as stated therein. The instructions and conditions as stated in the findings of fact and conclusions of law were identical to those stated in the decree of divorce which were as follows: 1. Anna Marie Berger shall sell and Roy M. Berger shall purchase, for and in consideration of the sum of $64,896.00, to be paid to Anna Marie Berger at the rate of $400.00 or more per month, commencing on the 15th day of March, 1965, Anna Marie Berger's one-half of book value of Evergreen Industries, Inc. which includes said above described stock certificates now in the name of said Anna Marie *152 Berger; 2. Roy M. Berger or his heirs or assigns shall not redeem more than 100 shares of said stock per annum, said shares redeemed shall be transferred to Roy M. Berger at the close of 12 month periods commencing from the date hereunder. 3. All rights of Anna Marie Berger, her heirs or assigns to vote said stock certificates are suspended as of the date hereunder until said certificates have been fully redeemed by Roy M. Berger, his heirs or assigns as aforesaid, or as long as Roy M. Berger shall not be in default on said payments. 4. To the extent allowed by law, Evergreen Industries, Inc., shall have the right to redeem said described certificates in the place and stead of Roy M. Berger, if it so desires and in that event shall be bound by the within conditions to the same effect as Roy M. Berger; 5. To partially secure the purchase of said certificates, Roy M. Berger shall procure, to the extent possible, a Group Life Insurance policy in the total sum of $25,000.00, with Anna Marie Berger as primary beneficiary of same so long as the described purchase continues said funds shall be exclusively applied to reduce the payment of said stock interest in the event of the *153 death of Roy M. Berger, with any balance of said insurance proceeds to go into the estate of Roy M. Berger. 6. Evergreen Industries, Inc. shall cancel the existing certificates above set forth in the name of Anna Marie Berger and reissue nine new certificates in denominations of 100 shares each of said shares to be deposited in escrow as aforementioned subject to the purchase of the Plaintiff herein as aforesaid. 7. Anna Marie Berger shall execute and deliver to the Plaintiff forthwith a proxy to vote said described certificates of stock in the name of Anna Marie Berger so long as there is no default in the purchase of same by the Plaintiff herein as aforesaid. 8. In the event of non-payment by the Plaintiff as aforesaid for said certificates of stock, the Plaintiff or his heirs and assigns shall have a grace period of 60 days within which to cure said non-payment; said period of grace to commence from the date said defaulted payment is due and owing. 9. The Seattle First National Bank, Lynnwood Branch, Lynnwood, Washington, shall upon demand, deliver such certificates as are fully paid for by the Plaintiff herein in increments of 100 shares. 10. Anna Marie Berger *154 shall execute and deliver forthwith to the Plaintiff an assignment separate from the stock certificates hereinbefore mentioned standing in the name of Anna Marie Berger, said assignment to be held by the escrowing bank for the purposes and uses mentioned. 11. Anna Marie Berger and Roy M. Berger shall execute forthwith wills which shall leave their respective stock interests in Evergreen Industries, Inc. to their two children, to-wit: Michael Leroy Berger and Roger Carl Berger. A further paragraph in the divorce decree provided that petitioner should receive all of the right title and interest, and stock outstanding in Evergreen Industries, Inc., except those certificates of stock standing in the name of Anna which were "subject to the payment of one-half value of said stock as hereinabove described," to Anna. In accordance with the provision in the divorce decree, Anna executed a voting proxy which provided that petitioner should have unlimited and irrevocable power of attorney to vote the certificates held in her name. This voting proxy was executed on February 24, 1965, and on the same date Anna executed a "Waiver and Assignment of Stock Certificates" which provided that *155 in consideration of the agreement by petitioner "to purchase my one-half community interest in Evergreen Industries, Inc., * * * which agreement is more particularly set forth in the matter of Berger v. Berger, King County Superior Court, State of Washington * * * for the total sum of $64,896.55," that she did "assign and transfer all my right title and interest in and to the following described stock certificates," now issued in her name. On March 2, 1965, petitioner signed a collection agreement with the Lynnwood Branch of the Seattle-First National Bank which referred to the stock certificates registered in the name of Anna being handed to them and recited the certificate number. Below the printed designation, "(Note, Contract, etc.)," was filled in "from" Anna "to" petitioner. This agreement provided that petitioner would pay $400 or more a month beginning March 15, 1965. Under this agreement the first three payments of $400 per month were made by petitioner to the bank on March 15, April 15, and May 10, 1965. The total amount provided for Anna to receive by the document was $64,896. On April 14, 1965, petitioner and Anna executed an escrow agreement with the Seattle-First *156 National Bank placing in escrow the 900 shares of Evergreen Industries, Inc., held in Anna's name, endorsed by her in blank, which agreement provided in part: We, the undersigned "Seller" and "Purchaser," place in escrow with you, subject to these escrow instructions, the following documents: Findings of Fact & Conclusions of Law, Berger vs. Berger, King County Course [sic ] No. 617911 dated February, 1965, wherein the Seller is Anna Marie Berger and the Purchaser is Roy Berger with an unpaid principal balance of $64,896.55 due the Seller payable in monthly installments of $400.00 or more plus/including interest at None % per annum from [*] , concerning the following described property: 900 shares Evergreen Industries, Inc. common stock. The escrow agreement was accepted on behalf of the Seattle-First National Bank on April 14, 1965. Prior to the execution of the escrow agreement by Anna and petitioner and its acceptance by the bank, petitioner's attorney in the divorce proceedings had written a letter to Anna's attorney in this proceeding stating that petitioner "will be paying his monies directly to the Lynnwood Branch of the Seattle First National Bank, but the stock *157 certificates and escrow agreement will be held by the Main Office." On February 28, 1965, the earned surplus of Evergreen Industries, Inc., was $108,570.86. On April 5, 1965, petitioner married Betty Lou Biss. On May 21, 1965, at a combined annual meeting of the shareholders and directors of Evergreen Industries, Inc., a resolution was passed concerning the redemption of 900 shares of stock issued to Anna. The minutes of the directors meeting recited in this respect as follows: The Chair [petitioner] then discussed the problems that have arisen by reason of the community stock ownership in Anna Marie Berger; the complicating factors created by the divorce of Roy Berger and Anna Marie Berger and the additional complication of Roy Berger's remarriage. These various factors were related to the requirement of the divorce order that Anna Marie Berger be paid certain monies and the further order of the court that stock in the name of Anna Marie Berger be redeemed on the basic premise that she has an undivided half interest in all of the stock issued in her name and that of Roy Berger. The Chair, Roy Berger, further stated that he wished to avoid any stock becoming community *158 property, he wished to assure the fact that his sons, Michael and Roger Berger, would end up with the shares in Evergreen Industries, Inc., in the event of either his death, or the death of the present Mrs. Berger; he stated that this was essential to guarantee continuity of the corporation; that to provide otherwise would jeopardize the economics of the corporation. Mr. Berger further stated that the beneficiary on his life insurance policy through the group policy purchased by the corporation will be changed to the name of the corporation; that the corporation is the owner of said policy, and that investigations will be held to determine if further insurance can be purchased for the benefit of the company. After a lengthy discussion of the problems created by the items noted above, upon motion duly made, seconded and unanimously passed, the following resolution was adopted: RESOLVED that in order to assure the continuity of ownership of this corporation; in order to not jeopardize the economics of this corporation; to avoid any stock ownership in the corporation other than that of Roy Berger or his sons, and to meet the demands of the corporation, it is hereby decided that *159 this corporation shall be a purchase and redemption, or by any other lawful means, obtain the stock interest of Anna Marie Berger for and on behalf of the benefit of the corporation whenever possible. In May 1965, Evergreen Industries, Inc., reimbursed petitioner for the $1,200 he had paid to the Seattle-First National Bank. On June 15 and for each succeeding month in 1965 and thereafter until August of 1969, Evergreen Industries, Inc., paid $400 a month to the Seattle-First National Bank. In 1966 one certificate for 100 shares of Evergreen Industries, Inc., which had previously been registered in Anna's name was delivered from the escrow. On March 31, 1969, at a combined meeting of the shareholders and directors of Evergreen Industries, Inc., a resolution was passed concerning the establishment of a trust for the payment of the stock being redeemed by the corporation. This resolution provided as follows: RESOLVED that the officers of this corporation be and they hereby are authorized to negotiate with Anna Marie Berger and the Lynnwood Branch of the Seattle-First National Bank relative to the redemption of the stock held in escrow and the creation of a trust with Anna *160 Marie Berger to be the beneficiary of said trust and the bank to act as Trustee; and that the officers of this corporation are authorized to execute whatever documents necessary to give effect to this program. On August 27, 1969, Evergreen Industries, Inc., established an irrevocable trust with Anna as the beneficiary which provided that Evergreen Industries, Inc., had transferred the sum of $47,296 to the trustees, Michael Berger and the Seattle-First National Bank, to be held for the beneficiary. The trust agreement further provided that the sum of $400 should be paid to the beneficiary each month. Pursuant to the establishment of the trust, 800 shares of stock in Evergreen Industries, Inc., were released from escrow at the Seattle-First National Bank. These 800 shares and the 100 shares previously released were cancelled and are carried on the books of Evergreen Industries, Inc., as treasury stock. The earned surplus of Evergreen Industries, Inc., as of February 28, 1969, was $464,721. The net worth of Evergreen Industries, Inc., as of December 31, 1964, was $129,792. Petitioners on their Federal joint income tax return for the calendar year 1969 reported no dividend *161 income from Evergreen Industries, Inc.
Respondent in his notice of deficiency increased petitioner's income as reported by $50,496 with the following explanation: During the year 1969, Evergreen Industries, Inc. made payments in the amount of $50,496.00 to or for the benefit of Anna Marie Berger which were in satisfaction of your obligation under the Decree of Divorce entered February 25, 1965 by the Superior Court of King County, Washington in Cause No. 617911. It is determined that such payments for your benefit comprise dividend income under sections 301 and 316 of the Internal Revenue Code and are includable in your gross income in accordance with section 61.
It is well settled that where a taxpayer is obligated to purchase stock held by another in a corporation of which he is also a stockholder and the corporation discharges this obligation of the taxpayer, the taxpayer has received a dividend because of the discharge by the corporation of his obligation. Robert Deutsch, 38 T.C. 118, 123 (1962), and cases there cited. The philosophy underlying *162 the consideration of such payments to be a constructive dividend is that the corporation has discharged the unconditional personal liability of its stockholder, and therefore the stockholder has received a benefit so that the payment by the corporation is essentially the same as had the money been paid to the stockholder and the stockholder used the money to himself pay his personal liability. The cases in this area are numerous since various fact situations are involved. However, the courts consistently hold that where there exists a personal and unconditional obligation on the part of the taxpayer to purchase the stock held by another in his corporation and this obligation is discharged in any manner by the corporation, whether by payment of the note the stockholder has given to the other party or redemption of the shares which the stockholder is unconditionally obligated to purchase, the taxpayer receives a dividend. Bayou Verret Land Co. v. Commissioner, 450 F.2d 850 (C.A. 5, 1971), affirming 52 T.C. 971 (1969) and Memorandum Opinions of this Court; Apschnikat v. United States, 421 F.2d 910 *163 (C.A. 6, 1970); Sullivan v. United States, 363 F.2d 724 (C.A. 8, 1966), certiorari denied 387 U.S. 905 (1967); Wolf v. Commissioner, 357 F.2d 483 (C.A. 9, 1966), affirming 43 T.C. 652 (1965); Woodworth v. Commissioner, 218 F.2d 719 (C.A. 6, 1955), affirming a Memorandum Opinion of this Court; Wall v. United States, 164 F.2d 462 (C.A. 4 1947); Robert Deutsch, supra; Louis H. Zipp, 28 T.C. 314 (1957), aff'd 259 F.2d 119 (C.A. 6, 1958); and Mobile Beverage Co. v. Patterson, an unreported case ( N.D. Ala. 1960, 5 AFTR 2d 1280, 60-1U.S.T.C. par. 76,123). It is equally as well settled that if a taxpayer who is a stockholder in the corporation has no unconditional obligation to buy stock of another stockholder, but merely a right in the nature of an option and he permits the option to be exercised by the corporation and the corporate stock is redeemed, he does not receive any economic benefit from the transaction, and therefore does not receive a constructive dividend. Stout v. Commissioner, 273 F.2d 345 (C.A. 4, 1959), reversing a Memorandum *164 Opinion of this Court; Niederkrome v. Commissioner, 266 F.2d 238 (C.A. 9, 1958), remanding on this issue a Memorandum Opinion of this Court; Holsey v. Commissioner, 258 F.2d 865 (C.A. 3, 1958), reversing a Memorandum Opinion of this Court; Richard B. Bennett, 58 T.C. 381 (1972); Tirzah A. Cox, 56 T.C. 1270, 1280 (1971); Arthur J. Kobacker, 37 T.C. 882 (1962); Milton F. Priester, 38 T.C. 316 (1962); and John A. Decker, 32 T.C. 326 (1959). Both parties recognize these well settled rules and their argument centers on whether, under the facts here present, petitioner had an unconditional obligation to purchase Anna's stock which was discharged by the corporation. Petitioner argues that his obligation was not unconditional since the divorce decree provided that the corporation would be permitted to redeem the stock to the extent provided by law. Petitioner states that under the law of the State of Washington, where a decree of a court is ambiguous, "resort can be had to the pleadings, the findings of fact and conclusions of law, and the entire record to ascertain the true intent and force *165 of the decree." George v. Jenks, 197 Wash. 551, 85 P.2d 1083 (1938). Petitioner argues that the decree here is ambiguous as to whether it is the obligation of petitioner or that of the corporation to "redeem" Anna's stock. He argues that when the statements which were made at the hearings are considered, it appears there was an equal obligation on the corporation to redeem as there was on petitioner. He refers to the word "redeem" being used with respect to petitioner's acquisition of Anna's stock as his primary support for this argument. In our view the record supports the diametrically oposite conclusion. The hearings show that the word "redeem" when reference was being made to petitioner's "redeeming" Anna's stock referred to his purchase of that stock and further that the right of the corporation to redeem was put in purely to have a provision of security for Anna that the total price for her stock would be paid in case petitioner predeceased her and the stock had not been paid for. The entire import of the hearings is that petitioner will purchase Anna's stock, and this is what is unequivocally stated in the findings of fact and conclusions of law and in the *166 decree of the court. Had there been any intent that petitioner would cause the corporation to redeem the stock, petitioner's counsel would have promptly objected to the decree as writtem. Further, the record is clear that there had been no action by the corporation with respect to any redemption of Anna's stock until a number of months after the decree of divorce was entered and this was only brought up after petitioner remarried. Clearly, there could be no obligation on the corporation to redeem when the corporation had taken no action with respect to redemption. Petitioner argues that even if we hold that the obligation to purchase Anna's stock under the divorce decree was solely that of petitioner, we should conclude that there did not exist an enforceable obligation on petitioner to purchase the stock, and therefore there was no unconditional obligation on him to purchase the stock. Petitioner states that a court in Washington has no jurisdiction to cause the parties to a divorce to sell property or enter into any type of binding sales contract or agreement. High v. High, 41 Wash. 2d 811, 252 P.2d 272 (1953). Petitioner misinterprets this case. High v. High, supra, *167 merely held that the lower court had abused its discretion in ordering property held by a husband and wife as joint tenants and not as community property to be sold. In that case the court specifically pointed out the duty of a trial court in a divorce action to make disposition of the community property of the parties. In fact the court did not even hold that the lower court lacked jurisdiction to order a sale of the separate property of the parties or property held by them as joint tenants, but merely held that in the particular case the court had abused its discretion in so holding. The property there involved was property purchased by the parties for the possibility of its appreciation in value and its value was nominal at the time it was ordered sold. Petitioner further argues that a divorce decree requiring the payment of money in the State of Washington is unenforceable. In support of this argument petitioner cites cases which hold that the failure of a husband to pay money, which under a divorce decree he is directed to pay to his wife as part of a property division, is not enforceable by contempt proceedings but that a contempt proceeding is proper only in connection *168 with provisions of a divorce decree which have a direct relationship to the husband's duty to support his children and/or his wife. Dexter v. Dexter, 52 Wash. 2d 456, 326 P.2d 332 (1958), and Bradley v. Superior Court, 48 Cal. 2d 509, 310 P.2d 634 (1957). These cases in effect hold that whereas the failure to pay alimony is the proper subject of a contempt proceeding, since alimony is an obligation of support and not a debt, the failure of a husband to pay an amount which a divorce decree provides he shall pay pursuant to a property settlement with his former wife is a debt and therefore is not enforceable in a contempt proceeding, since it is unconstitutional in the State of Washington to imprison a person for debt. The import of the cases cited by petitioner is directly contrary to petitioner's argument. The indication is that a divorce decree can direct the payment by a husband to his wife of money in connection with a property settlement and that the money the husband *169 is directed to pay is an indebtedness to the wife. The case of Robinson v. Robinson, 37 Wash. 2d 510, 225 P.2d 411 (1950), specifically points this out. In that case the court pointed out that although it has been held that the provisions of decrees with respect to property settlements, "as they relate to the payment of money (as distinguished from alimony or support money for children), cannot be enforced by contempt proceedings. * * *" "If a court of equity could not enforce its decrees, ""* * * obviously the court would be rendered impotent and we would have neither law nor order but every one could do as he or she pleased.""" This case was referred to in the case of Mickens v. Mickens, 385 P.2d 14, (Sup. Ct. Wash., 1963), in which the court held that where a divorce decree provided for the husband to pay an amount to the wife in settlement of their community property, the wife was entitled to bring a separate action against the husband to enforce the payment of the sum. In so holding the court stated at 17: Where a property settlement agreement is approved *170 by a divorce decree, the rights of the parties rest upon the decree rather than the property settlement. United Benefit Life Ins. Co. v. Price, 46 Wash. 2d 587, 283 P.2d 119 (1955). However, whether respondent's rights be now considered contractual or otherwise, a basis for relief exists when a party to a divorce action fails to carry out the terms for the division of property made in the divorce decree and loss results to the other party as a result thereof. The case of United Benefit Life Ins. Co. v. Price, 46 Wash. 2d 587, 283 P.2d 119 (1955), referred to in Mickens v. Mickens, supra, specifically points out the duty of the trial court to make a disposition of the community property of the parties, and that where a property settlement is approved by a divorce decree, the rights of the parties rest upon the decree rather than the property settlement. On the basis of these cases, we consider it clear that petitioner had an unconditional obligation to purchase Anna's stock in Evergreen Industries, Inc., and that this obligation was discharged by the corporation of which he was the sole stockholder after the redemption of Anna's stock. *171 Therefore, the corporation paid petitioner's unconditional obligation, and under the holdings in the numerous cases cited above, this payment by the corporation resulted in a constructive dividend to petitioner. Decision will be entered for respondent.