**William F. WOLF, Jr., and Gertrude D. Wolf, Tami Lee Wolf, William F. Wolf, III, Gayl Ann Wolf, Boni L. Wolf and Terry J. Wolf, all minors, by their Guardian, William F. Wolf, Jr., Petitioners,**

**v.**

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

**Nos. 20340–20345.**

United States Court of Appeals
Ninth Circuit.

March 4, 1966.

Clyde E. Tritt, Stanton H. Zarrow, Los Angeles, Cal., for petitioner.

Richard M. Roberts, Acting Asst. Atty. Gen., Lee A. Jackson, Melva M. Graney, Robert A. Bernstein, Richard Heimann, Dept. of Justice, Washington, D. C., for respondent.

Before BARNES and ELY, Circuit Judges, and CROCKER, District Judge.

CROCKER, District Judge:

Before us is a petition for review of a Tax Court decision holding that the petitioners were deficient in the payment of their income tax for the taxable year 1958 in the amount of $17,246.84. The issue is whether the Tax Court properly held that the assumption of the Partnership's personal liability constituted the

payment of a dividend to the partnership, and that the transaction was not within the meaning of Section 351 of the Internal Revenue Code of 1954.[1]

The facts of this case as are relevant to this appeal are as follows: Petitioners, during the taxable year involved, were members of W. F. Wolf Investment Co. (hereinafter referred to as "Partnership"), a limited Partnership, which was operated by William F. Wolf, Jr. (hereinafter referred to as "Wolf"), as general partner. Prior to March 31, 1958, Partnership's only significant asset consisted of 873⅔ shares of common stock of Harron, Rickard and McCone Co. of Southern California (hereinafter referred to as "Harron") which were pledged to secure its only significant liabilities consisting of its obligation to pay to Mulvey White (hereinafter referred to as "White") and Charles L. Haynes (hereinafter referred to as "Haynes") the outstanding balance on two promissory notes issued to Haynes and White in connection with Partnership's acquisition of 252⅔ shares of stock of Harron from White and Haynes on November 10, 1955. As result of the acquisition of Harron's stock from White and Haynes, Partnership, White and Haynes each owned one-third of the issued and outstanding stock of Harron.

In order to eliminate dissension which had arisen among the shareholders, White and Haynes agreed to dispose of their shares of Harron stock. A new corporation W. W. Machinery Co. (hereinafter referred to as "Machinery") was formed on February 13, 1958, and on March 31, 1958, Partnership transferred to Machinery its 873⅔ shares of stock of Harron in exchange for 26,220 shares of common stock of Machinery. Machinery also assumed Partnership's liability (which was secured by a pledge of Machinery's 873⅔ shares of Harron stock) in the amount of $54,056.46 which represented the unpaid principal and accrued interest on the notes Partnership had executed in favor of White and Haynes upon the acquisition by Partnership of the 252⅔ shares of Harron stock from Haynes and White. On the same date, March 31, 1958, and pursuant to an agreement entered into between Machinery and White and Haynes whereby Machinery obligated itself to buy, and White and Haynes obligated themselves to sell, the Harron stock owned by White and Haynes, Machinery sold 1,000 shares of its Preferred stock for $100,000, which amount was used by Machinery as a down payment in the purchase of the Harron stock from White and Haynes. Immediately thereafter, Machinery, as the sole stockholder of Harron, caused Harron to be merged into it. Concurrently with the merger, Machinery changed its name to Harron. From the date of the merger, Machinery has continued to operate the business formerly conducted by Harron.

Jurisdiction is conferred upon this court by virtue of sections 7482 and 7483 of the Internal Revenue Code of 1954.

▮ The Tax Court determined that the petitioners received a dividend taxable as ordinary income. In reaching its conclusion, it properly applied the rule that the incidence of taxation depends upon the substance of a transaction. Gregory v. Helvering, 293 U.S. 465, 55

---

1. § 351. Transfer to corporation by transferor.

(a) General Rule.—No gain or loss shall be recognized if property is transferred to a corporation by one or more persons solely in exchange for stock or securities in such corporation and immediately after the exchange such person or persons are in control (as defined in section 368(c)) of the corporation. For purposes of this section, stock or securities issued for services shall not be considered as issued in return for property.

(b) Receipt of Property.—If subsection (a) would apply to an exchange but for the fact that there is received, in addition to the stock or securities permitted to be received under subsection (a), other property or money, then—

(1) gain (if any) to such recipient shall be recognized, but not in excess of—

(A) the amount of money received, plus

(B) the fair market value of such other property received; and

(2) no loss to such recipient shall be recognized.

S.Ct. 266, 79 L.Ed. 596; Griffiths v. Commissioner, 308 U.S. 355, 60 S.Ct. 277, 84 L.Ed. 319 and Factor v. C. I. R., (9th Cir.) 281 F.2d 100, cert. denied 364 U.S. 933, 81 S.Ct. 380, 5 L.Ed.2d 365. In arriving at its determination in the instant case, the Tax Court looked to the controlling facts and circumstances.[2]

■ We believe that the taxpayer has not sustained the burden that the Tax Court's finding was clearly erroneous. Peurifoy v. Commissioner, 358 U.S. 59, 79 S.Ct. 104, 3 L.Ed.2d 30; Truck Terminals, Inc. v. C. I. R., 314 F.2d 449 (9th Cir. 1963); Young v. C. I. R., 268 F.2d 245 (9th Cir. 1959).

The petitioners vehemently contend that the transaction was a nontaxable transaction within the meaning of section 351 of the Internal Revenue Code of 1954, the text of which has been set out herein at footnote 1. The respondent contends that the transaction does not fall within section 351 of the above code. Respondent contends alternatively, that if it does, the liability assumed is to be considered as money received by Partnership on the exchange under section 357 of the code, and that, therefore, a gain should be recognized to that extent, pursuant to section 351(b) of the code, it being respondent's position that the principal purpose in carrying out the transaction in the form adopted and in arranging for the assumption of the liability was a purpose to avoid the tax on the exchange, and that the petitioners have failed to prove the contrary by the clear preponderance of the evidence. The petitioners, in turn, contend that the purpose of the transaction, including the assumption, was not a purpose to avoid the tax on the exchange and that the purpose was a bona fide business purpose. In the alternative,

the petitioners contend that, in any event, any gain which might be recognized on the exchange is a long-term capital gain.

After very careful consideration of the contentions of the parties, it appears that the sole question to be resolved in this case turns upon whether there was an exchange within the meaning of section 351 of the Internal Revenue Code of 1954. It is not in dispute that there was literal compliance with section 351 of the code. However, as stated in Gregory v. Helvering, supra, "the incidence of taxation depends upon the substance of a transaction." In the *Gregory* case, supra, it was stated in part:

> "The legal right of a taxpayer to decrease the amount of what otherwise would be his taxes, or altogether avoid them, by means which the law permits, cannot be doubted. United States v. Isham, 17 Wall. 496, 506 [21 L.Ed. 728]. * * * But the question for determination is whether what was done, apart from the tax motive, was the thing which the statute intended."

■ The government may look at actualities, and upon determination that the form employed for doing business or carrying out the challenged tax event is unreal or a sham, may sustain or disregard the effect of the fiction as best serves the purpose of the tax statutes. Higgins v. Smith, 308 U.S. 473, 60 S.Ct. 355, 84 L.Ed. 406. What is decisive in a case such as is before the court is what actually occurred. Section 351 (which is the successor to section 112(b) (5) of the Internal Revenue Code of 1939) does not grant an exemption, but operates only as a postponement of the tax until a gain is clearly realized by a future sale or an exchange amounting to a sale. That

2. "Viewing all the steps taken as parts of a single transaction, as both parties agree they should be considered, and looking to the substance and *net effect* of the transactions, we think that in reality it was Harron which redeemed the stock of White and Haynes and assumed and paid the personal liability of Partnership. It is true, as the petitioners point out, that Machinery was a valid corporation and that legally and technically it was the entity which survived the merger. However, we think it immaterial which corporation continued. The effect was the same as if Harron had continued and Machinery had been put to death. Under the circumstances, we think the use of Machinery cannot be deemed sufficient to establish an exchange within the contemplation of section 351." [Emphasis added.]

section is a so-called nonrecognition provision pursuant to which gain upon the exchange of property for stock of a controlled corporation is deferred until some later taxable event. In looking to the substance of the present transaction the "net effect" would not be a postponement of recognition of a gain on an exchange, but the escape of the tax upon a dividend. The purpose of the transaction was essentially an escape of a tax upon a dividend, which is contrary to the meaning of section 351 of the Internal Revenue Code of 1954.

The opinion of the lower court is affirmed in its entirety.